Good morning, Your Honors. Ted Sims, appearing for the estate of the First Representative, Jim Schacher, for the estate of Patricia Schacher. I know from the extensive... Is it pronounced Schacher or Schacher? Schacher. Schacher. Like it's an O? Hopefully we won't say anything that will cause that. Yeah, right. But, nonetheless, let me get right to the meat of the coconut, because I have the clock ticking right in front of me. The meat of the coconut? Oh, I'll miss a few. I'll mangle a few other metaphors if you'll tolerate it, too. It's a Hawaiian expression. The gist of this whole, the mistake made by the lower court is they really did try to cram a square peg into a round hole. And the initial error, the conceptual error, led to a whole series of follow-up errors. And the initial conceptual error was in attempting to require, to force-fit a dollar amount into the one-ninth share of the estate to which the defendant was legitimately entitled. Well, the only dollar amount that was before the court was the number supplied by your client, the $438,000 in the estimated value of the estate, correct? No, actually, there were two inventories provided, which did not include the speculative value of the recovery of these claims against the children of Patricia Schacher. I mean, this probate in Multnomah County had been going on how many years? It's still ongoing, Your Honor. All right. Is there any money left? Are you guys? Some, yeah. Yeah? What, it started out $400,000? No, it started out with about $180,000. It's up to $400,000? No. They only got to that $438,000. And that's the number that the lower court became fixated on. But they only looked at the top number. They didn't look at the detail, which was exquisitely provided, that included assumptions. And the primary assumption in that $438,000 figure was that there would be full collection, including prejudgment interest, against all three of Donald Dolph, the defendant here, and his two siblings. But it's based on the proof of claim that your client filed in the bankruptcy court, is it not? Yeah. And that proof of claim includes. I mean, there's an attachment that shows. I mean, one of the more bogus arguments that the defendant makes here is that there shouldn't be any prejudgment interest, because the dollar amount taken wasn't known and couldn't be calculated. Counsel, I'm a practical man. Good. And I look at this, and I'm reminded of Leonardo da Vinci and Michelangelo and all these other people who had to litigate their father's estates. It went on for years and years and years and years and years and years. Pretty soon there wasn't anything left. And I see that in this case. Each of you has raised arguments that. But at the end of the day, at the end of the day, you're dealing with the court of equity, that in terms of fashioning relief for basically a fraudulent conveyance, has a great deal of discretion, a great deal of discretion. I have no doubt that some of your points are correct, particularly with respect to the amount of unjust enrichment. But have you folks tried to – this is probably a silly question. It is. Have you tried to settle this thing before? I mean, this is – forgive me. This is ludicrous that you're here before the Ninth Circuit Court of Appeals in an estate that has as little money as this probably still does. I'm sure both very able counsel. I don't know what you charge for your time or whether it's all on a contingent basis. But, I mean, where's the common sense in this? We'll give you a ruling. We'll – you both briefed your cases and so on. We'll give you a ruling. But this one, I just – it seems to me the parties have taken leave of their senses. I don't understand why this case is before us. Well, I can go – if you'll permit me to move a little bit past the record on the related file against Feig, the one we actually went to judgment on in the State Court, which, by the way, is very undeniable evidence that, in fact, prejudgment interest can be calculated accurately in a case of this sort. And I got a judgment against her. And you'll notice in a footnote in my reply brief that that judgment is wholly incollectible because she and her husband have now filed a Chapter 7 bankruptcy. Now, going beyond the record, I can assure the Court that efforts were made to settle that claim for pennies on the dollar before that case ever went to trial in the State Court. But I can't control the reasonableness or unreasonableness of the other side of cases. So this is just one that's just going to go down where people are going to be grappling in the dirt until everybody's dead. Is that pretty much what it is? So modern-day jar and dice versus jar and dice. The problem that I've got as I stand here is I've got to convince you that somehow, having engaged in a mud wrestling match, I don't have dirt. And were you seeking equitable relief? Absolutely. But you look at the facts. So if the parties are covered in mud, how do we apply the unclean hands doctrine? Because it sounds like a schoolyard thing. Somebody had to start it. This was not a battle we sought. This was a battle that was forced upon us by horrendous greed and grasping of three family members that took money that they weren't entitled to and have refused to give it back. But I think where Judge Smith was going is given the relatively small amount of money involved, and we're talking about just a few thousand dollars either way, you're burning up far more than that, litigating it, than what you're ever going to recover. What we're entitled to recover from the defendant is either the full equity in his house, which is about 60,000 bucks, because he took the credit for the payments he made under the plan and the savings bond that he was forced to give back. Well, let's say we disagree with that. Let's just say that given the relative amount of money that went in for the down payment that at most you're entitled to a pro rata share of the increase. He made payments during that time. There was appreciation and so on. Sure, some portion of it, but not the whole thing. Say we conclude it that way. Why are you continuing this litigation? That would be an erroneous mathematical case. Well, I understand. I understand your position. But this arguendo, say that were the case, what's the point? The point would be that I guess we'd be entitled to the 19,000 that we proved went right into the house. And 19,000 is better than the 2,000 that the lower courts gave us. I can see Captain Ahab sinking gradually into the sea behind Moby Dick. I mean, that's basically what we're dealing with here. This is unbelievable. Fortunately, none of you bear a passing resemblance to her in Belleville. So I hope I'll be able to help you out. Call me Ahab. Call me Ishmael, I think is the way that book started. Okay. I don't see any tattoos, though. No. But if you go outside, there are some folks that will help you. I dodge them regularly. Go and have your office downtown. Look, let me get back to meeting the standards that we've got here. I mean, you talk about what the lower courts did that was wrong. Of all the errors that were made, the most egregious one was where they gave the defendant a credit, which he was not entitled, of a one-ninth share based on prejudgment and interest that he was going to host the estate. But after the same judge found, he didn't have to pay ever. Counsel, if you take issue with the question I asked opening, that the estate's not really valued at $438,000, it's some other number, doesn't that reinforce the wisdom of Judge Dunn's ruling that because we can't put a dollar figure on exactly what a one-ninth share is, it is not a liquidated debt, and therefore, I can't compute interest on. No. Isn't that what Oregon law says? No. That's an apples and oranges comparison fallacy. But we've got to have an ascertainable number, do you know? We have an ascertainable number. But it keeps changing. No, it doesn't. Well, I've got two proofs of claim, one filed in the bankruptcy court, one filed in the probate court, and the probate court says $154,000, and the bankruptcy court says $438,000, and which is it? None of the above? No. The third number. The one that was filed in the probate court did not include a figure, which was quite speculative, as we've well established, in terms of what might ultimately ever be collected against these three siblings. And that amounts to about $280,000. I'm sorry. I missed the third one. I got $185,500 in the amended inventory that was filed.  And now, I'm sorry. That was bumped up because we Now we've got a fourth number, which is $200,000 and how much? Okay. The $185,000, the difference between the first inventory and the second was my client was able to locate some savings bonds that had been inappropriately transferred and got his hands on those. Okay. If we have four different numbers, how can I declare that it is clear error, and I guess it would have to be clear error, or an error of law for a bankruptcy judge sitting in equity to make a ruling that I can't determine what the exact number is on which to compute interest? No. Because you can't. You don't, whether it's 154, 185, 438, you don't need any of those numbers to compute what the defendant owes. Those are only relevant if you choose, which I think is a conceptual error, to say, well, I want the final number because I want to compute the one-ninth share. Doggone it, folks. That's a credit, a speculative credit, the guy is entitled to maybe down the road. We're entitled to, just as we got a judgment against the Cistern State Court, the full amount plus interest, and that's an easily computable figure, and the numbers are laid out in the attachment to that proof of claim. Then they're entitled down the road, maybe some point in the future, to an offsetting one-ninth credit of the figure that's calculated by the probate court. I think that, frankly, the bankruptcy court is so used to having people come to them with a whole ball of wax of problems and feeling like they're the one that has to resolve everything, and then you get the argument about, well, courts always compute future damages, blah, blah. No. This is not that kind of a case. There's already a probate proceeding going on. But it's so simple. Why has it dragged on so long? Where's the meat of the coconut? The meat of the coconut is an accurate math and accurate conception of what the issue is. The Court went down into the Alice in Wonderland trail when it decided that there was even a need to figure out what the eventual value of a one-ninth share would be. That's unnecessary. The probate court will handle that at a later date. Don't need to go there. So what's the bankruptcy court supposed to do? Keep the case open for the next 5 years or 10 years? No. Enter the judgment against the defendant for the full amount and just provide that eventually he's entitled to a credit against it. I mean, we wouldn't be opposed to them saying, well, you can't collect on your judgment until the probate case is closed. That's a timing issue. We can deal with that. But the bankruptcy court had no business speculating on what that one-ninth value would ultimately be. And doggone it, if they felt the uncontrollable urge to so speculate, at least they could have done a lot better than coming in with a couple thousand bucks. That's way off the mark. Okay. Thank you. Thanks. I'll save 3 minutes here. May it please the Court. Dan Lindahl appearing on behalf of the appellee, Donald Dolph. I think a useful starting point is with Judge Dunn's conviction that this case required resolution. He couldn't solve all of these problems and all of the claims and all of the courts, but this one he could. And he said, I'm going to end it here. And he told the parties before the trial began, here's where I am. Here's where I'm leaning. Here's the decision I'm going to render. To get me off this, you need to give me some evidence. You need to change my opinion. He gave the parties a great gift in doing that. And the plaintiff's response was to say, essentially, I'm going to ignore you, Judge, because I don't think you should do what you say you're going to do. What the judge said he was going to do was figure out the net, net, net amount by which Mr. Dolph was unjustly enriched, and that included taking account of a future probate share. He told the parties, that's what I'm going to do. The plaintiff's position was, don't do that. Don't do that. Don't do that. They never said, don't do that, but if you do, here is the number to apply. They left Judge Dunn on his own, and what Judge Dunn did was look at the proof of claim the plaintiff filed and never changed. He said, this is what I'm going to do, because I'm going to resolve this thing. Here's the best evidence I have. I told you this is where I am. They didn't come in with anything to move him off that. And now, here, they complain about him rendering the very decision he said he was going to render based on the evidence that he said he was going to base it on. Judge Dunn, I think, would be disappointed to find this argument being presented now here. I guess you could say if it was too speculative, you know, he used his discretion. Sure. If he had just said, I saw a bus 275 this morning and I'm going to award 275 or something, sure. But here, there was a basis. There was a sworn proof of claim submitted by the plaintiff that said, here's what we think this estate's worth. Here's what the share is going to be by Mr. Dolph. When it served plaintiff's purposes to put those numbers on paper and submit them, that's what he submitted. When it served plaintiff's purposes to have a different number, he claims a different number. And apparently, as we've heard, the number changes all the time. So this Court, Judge Dunn said, I want this over with. I want to disentangle these people. I'm not going to have this go on forever. In my discretion, sitting in equity, I'm going to make these decisions. It would be inequitable to award prejudgment interest dating back some 15 years on transfers that occurred long ago. And by the way, the estate wasn't deprived of that money, so there was no, you know, it's not as if this money would have been in the hands of the plaintiffs. It would have been in the hands of Patricia Shacker, you know, dead now, lo these 10 years as we continue to litigate this matter. And what do they seem to want? They seem to want a remand so we can go back and litigate some more. Go ask Judge Dunn to recalculate the amount of the offset from the estate. We'll be here again, what, another two years from now? Twelve years and Ms. Shacker's dead? Judge Dunn saw the reasonableness of bringing this to a conclusion, and today should be the conclusion. Are there any questions from the Court? Thank you. I'll impose on you for a couple minutes. Look, Frank Bearden in Multnomah County Circuit Court had no problem computing the exact dollar amount on the Marilyn Feig case. There's no claim that she asserted that she should have an immediate credit. That's a horrible apples and oranges comparison. The defendant took money 10, 15 years before he should have. It would clearly be inequitable and unjust to allow somebody to have the use of property for 10 or 15 years and pay nothing for the use of that. The defendant's own brief mentions that prejudgment interest and computation is done in accordance with Oregon law. That was done in the Feig case in the State court. Now, with the Feig's in bankruptcy, and Kate so far has escaped anything based on the ruling of the Montana Supreme Court, I think this Court should take judicial notice of it. I'll give you the cite. So there's another related action in Montana? There was. The third sibling? The third sibling. If you look at the proof of claim, they keep saying that that 438, it's our number and we should have our feet buried in concrete in it. That's not true. We set out the contingencies under the circumstances under which that number would be realistic, and those circumstances have not come to fruition. There's $280,000 that has not been and will not be collected against these three siblings, yet Judge Dunn gave the defendant credit for one-ninth share of that $280,000 fictitious number. And it's not we're not playing with numbers. We're not taking different numerical positions in different courts. Our position has been very consistent. The case, Shocker v. Cates in Montana, it's found at 168 Pacific 3rd, 1048. She dodged on jurisdictional grounds. So the reason that this estate is down to small dollars and kind of left holding the bag is not because we're running some kind of judicial, you know, crusade against innocent people. My client has a fiduciary obligation as the personal representative of the estate to pursue claims and to treat all the beneficiaries equally. He would be subject, frankly, to a surcharge motion in state probate court if he just decided, well, can't chase these people, it's just not worth it, let them go, let them get away with it, and have an unequal distribution on the other side. He's got to split the baby equally. And what Judge Dunn did here was split the baby very unequally and make an inherently contradictory ruling. I mean, you can't say you don't have to pay that $20,000 in interest, but you can have credit for a ninth of it over here. That doesn't pass the smell test. Okay. Thank you. Office submitted.
judges: Paez, Tallman, Smith M.